**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THOMAS J. CAGGIANO

      Plaintiff,

                                    CASE NO.:

v.

DUVAL COUNTY SCHOOL BOARD,

      Defendants.

_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff Thomas J. Caggiano ("Caggiano") brings this action to vindicate his First Amendment constitutional and civil rights to engage in public discourse on political and social issues. Such rights are protected by the First Amendment of the United States Constitution and the Constitution of the State of Florida. The Duval County School Board School Board ("School Board") violated those rights by taking adverse action against him while exercising protected speech.

## I.     NATURE OF THE ACTION

1. Caggiano is a certified teacher in the State of Florida who taught advanced mathematics at Sandalwood High School in Jacksonville, Duval County, Florida.

2. Caggiano, who is politically conservative, maintained a social media account on Facebook on which he posted, and reposted, items of personal interest, political and social issues, humor, and other topics public discourse.

1

3.    In response to these Facebook posts and reposts, particularly those which reflected his conservative political views, the School Board went to great lengths to sanction Caggiano, filing formal sanctions against him.

4.    Although Caggiano contested the charges against him, including asserting First Amendment protections, the School Board ultimately imposed sanctions against him.[1]

5.    There is no dispute that Caggiano was not disciplined for anything that happened in the classroom, on school property, or using any school computer or device.  Instead, the School Board punished him solely because of two Facebook items – both related to then presidential candidate Senator Bernie Sanders – that Caggiano reposted on his own time and from his own private home.  (Though the School Board's charges included several other Facebook posts the charges as they related to those posts were ultimately rejected by a state administrative law judge and the School Board itself, leaving just the two Sanders posts as the basis for discipline.)

6.    The actions of the School Board violate Caggiano's First Amendment and Florida constitutional rights to free speech and free exercise as well as his rights under Title VII of the Civil Rights Act of 1964.

7.    Caggiano brings this action to vindicate his constitutional and civil rights, the rights protected by the First Amendment of the United States Constitution, Article I Section 4 of the State of Florida Constitution, and federal law.

---

[1] Those sanctions are currently on appeal with the Florida First District Court of Appeal, Case Number 5D23-2081.

## II.  PARTIES

8.  Plaintiff Thomas A. Caggiano is a resident of Jacksonville, Duval County, Florida.

9.  Defendant, School Board is a school district located in Jacksonville, Duval County, Florida.

## III.  JURISDICTION

10.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This action arises under the Constitution and laws of the United States; 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII").

11.  Caggiano also seeks a declaration of his rights in this case of actual controversy under 28 U.S.C. § 2201.

12.  This Court has personal jurisdiction over the School Board because it is located in Duval County, Florida and the facts which are the subject of this proceeding occurred in Jacksonville, Duval County, Florida within the area encompassed by the United States District Court, Florida Middle District of Florida, Jacksonville Division.

## IV.  VENUE

13.  Venue is proper in this court under 28 U.S.C. § 1391.

14.  The School Board is located in Duval County, Florida and the facts which are the subject of this proceeding occurred in Jacksonville, Duval County, Florida within the area encompassed by the United States District Court, Florida Middle District of Florida, Jacksonville Division.

3

## V.    STATEMENT OF FACTS

### A.    Caggiano's Background and Employment History.

15.    Caggiano joined the United States Navy right after college and served aboard the USS Nathanial Green.  He was a submarines ballistic missile expert.

16.    He then went to Navy flight school in Pensacola and flew helicopters for about seven years, ultimately promoted to the rank Lieutenant Commander, until his honorable discharge from the service.

17.    Both his parents were teachers, and he decided to continue serving by going into teaching too, having obtained a bachelor's degree in mathematics in college.  He has taught for approximately 29 years, the last 18 years or so at Sandalwood High School.  In addition to mathematics, he taught dual enrollment courses for Embry-Riddle Aeronautical University, including "Introduction to Aeronautical Science" and "Unmanned Aircraft Systems."  His high school math courses included geometry, trigonometry, analytic geometry, probability and statistics, financial algebra, algebra II, calculus, and AP statistics.

18.    Regarding his teaching practices, Caggiano believes that it is important to keep a clear line between his personal views and his role as a teacher; he believes that a teacher should not teach any biases that they might have.  Rather, when it comes to politics or other matters of controversy, both students and teachers should be neutral in the classroom.  As an advanced math teacher, Caggiano recognizes that a teacher would have to get extremely far off topic for such issues to even arise.

19.    Caggiano has never strayed from these principles of neutrality and from keeping his personal views out of the classroom and away from school.

20.     There has never been any allegation, let alone evidence, of any unsatisfactory performance or impropriety in the classroom by Caggiano.

21.     To this day, Caggiano has never been disciplined nor received an unsatisfactory review for anything having to do with his teaching or any activity at all that occurred in the classroom or having anything to do with school.

22.     And, prior to the incident underlying this complaint, Caggiano was never previously the subject of discipline by the Duval County School Board for any reason at all.

23.     Throughout his career, Caggiano had never received an unsatisfactory or "needs improvement" teacher evaluation.  In fact, in the years prior to this action, he was consistently rated as "highly effective."

24.     Indeed, in 2015, Caggiano was recognized for his sustained above average performance and received the Governor's Shine Award for his teaching.

25.     Nonetheless, because of "complaints" about Caggiano's politically conservative Facebook posts alone – posts that he shared only with his friends - and *before* any formal disciplinary investigation, Caggiano was removed from his math position at Sandalwood High School.  He was ordered instead to report to a distant warehouse on Bulls Bay, with no teaching assignment at all -- the School Board's version of Siberia -- to await resolution of the investigation.

26.     Caggiano was never informed how long he was relegated to this outpost.  And there he remained, idle, as the days, weeks, months, and finally, the entire 2020-2021 school year school year crept by.  At the warehouse, Caggiano had no real job or duties.  The devaluing effect from a lack of

meaningful work and the day-to-day uncertainty about his fate was demoralizing, dehumanizing, and the cause of substantial stress.

27.    Even after the entry of the School Board's Final Order on January 19, 2022, – which exonerated Caggiano for most of the charges the administration had alleged --  he has been unable to return to his advanced math teaching position at Sandalwood, or to teach advanced math at all. Instead, he works with students having severe learning disabilities that, though classified as high school students, function at approximately the pre-K grade level.   This was one of the few positions the School Board would allow him to take.

### B.    Caggiano's Facebook Account.

28.    In 2008, Caggiano's daughter set up his personal Facebook account.  He came to learn that it was a new way to communicate with friends and family, sharing pictures, family news, and other items of personal interest and the like.  Caggiano was unfamiliar with social media and relied on his daughter to set up his account and its settings.  They both believed that was set up as "private' meaning that only people he accepted as "friends" could see his Facebook posts.

29.    In 2019, after an unrelated matter led to minor media coverage about Caggiano, he received Facebook messages from unknown persons. Caggiano had his daughter check the settings, found that his account had somehow become public (or perhaps had not correctly been set to private in the first instance, as they had believed), and asked his daughter to change it back to "friends only."

30.    Thereafter, certain posts and reposts on his personal Facebook account were accessed by members of the public, including school personnel, and possibly students.   None of these people were Caggiano's Facebook

"friends."   Nor did Caggiano invite them to access his personal Facebook page or even let them know he had one.  Any such persons would have had to actively and deliberately seek out Caggiano's posts, and thus such access was of their own volition.

31.    Subsequently, after such third parties accessed Caggiano's personal Facebook account, the School Board commenced disciplinary proceedings in earnest against Caggiano.

32.    Caggiano also maintained a separate Facebook account named "AP Caggiano" for interacting with students.  This school-related Facebook account was created to allow students to contact him with questions or problems and the students could share with other students.  None of his personal Facebook posts, or any other non-work-related material, was ever included in this separate account, and played no part in the disciplinary process.

### C.    Amended Step III Progressive Discipline Notice.

33.    On March 25, 2021, the School Board issued its formal charging document, called, Amended Step III Progressive Discipline Notice (the "Amended Step III Notice") to Caggiano.  A copy of the Amended Step III Notice is attached hereto as Exhibit A.

34.     Although the Amended Step III Notice references thirty-seven posts, it cited only the following six (6) posts, or reposts, as the basis for the disciplinary proceedings[2]:

- "My son is taking part in a social experiment." "He has to wear a Bernie 2020 t-shirt for 2 weeks and see how people react." "So far, he's been spit on, punched and had a bottle

---

[2] The following quotations are from the Amended Step III Notice, not the posts themselves, and in several cases do not accurately reflect the content of the actual posts.

thrown at him." "I'm curious to see what happens when he goes outside."

- "If this girl (referring to a photograph of a female) sees a penis at a party, it's a crime, but if a girl (referring to a photo of a young child) sees a penis in the woman's bathroom, it's tolerance. "Vote Republican."

- Dumbass liberals are now organizing protests against the killing of the Iranian general (terrorist) who was responsible for many attacks against the USA." "Amazing how Trump derangement syndrome can cause democraps, and the mainstream media, to support our enemies."

- A man goes home and masturbates his typical fantasy, a woman on her knees, a woman tied up, a woman abused." "A woman enjoys intercourse with her man, she fantasizes being raped by 3 men simultaneously…"

- "Mean while at the bikers for Bernie Rally" (referring a photograph of two (2) naked males on a motorcycle).

- "Teach this childish nasty bitch a lesson," "Have her treason ass removed from office and put in jail."

Copies of the *actual* posts (Exhibits 6, 8, 12, 15, 25, and 27) at the hearing) are attached as Composite Exhibit B.

35. A seventh post was also referenced as Caggiano retaliating regarding an alleged transgender pronoun issue. A copy of this actual post is attached as Exhibit C.

36. The School Board asserted that Caggiano acted,

> in direct contradiction to the District's mission to "Provide educational excellence in every school, in every classroom *for every student*, every day." This is

8

without regard to a student's ethnicity, race, religious beliefs, gender orientation, political persuasion or any other qualifier.  In addition, the Principals [sic] of Professional Conduct of the Education Profession in Florida (Florida Administrative Code 6a-10.081), requires that an individual, "take reasonable precautions to distinguish between personal views and those of any educational institution or organization with which the individual is affiliated.

Amended Step III Notice at p. 3 (emphasis in original).

37.    Specifically, the School Board charged that by positing these seven politically and socially conservative items on Facebook, Caggiano violated the following provisions:

I.    ***Section 1006.147 (2), Florida Statutes – Bullying and harassment prohibited:***

*(2)    Bullying or harassment of any student or employee of a public K-12 educational institution is prohibited.*

II.    **Section 6A-5.053, Florida Administrative Code, including as follows:**

a.  **6A-5.056(1)** – *Immorality*, engaged in conduct that is inconsistent with the standards of public conscience and good morals.  It is conduct that brings the Respondent or the education profession into public disgrace or disrespect and impairs the Respondent's service in the community.

III.    **Section 6A-5.056(2), Florida Administrative Code, including as follows:**

a.  **6A-5.506(2)** – *Misconduct, means herein the following:*

(b) A violation of the Principles of Professional Conduct for the Education Profession in Florida as adopted in Rule 6A-10.081, F.A.C.; or

9

(c) A violation of the adopted school board rules;

b. **6A-5.056(5)** – *Willful neglect of duty, means herein the following:*

*Intentional or reckless failure to carry out required duties.*

III.  **Principles of Professional Conduct of the Education Profession in Florida (Florida Administrative Code 6A-10.081) as follows:**

**6A-10.081(1)(a)** – The educator values the *worth and dignity of every person*, the pursuit of truth, devotion to excellence, acquisition of knowledge, and the *nurture of democratic citizenship*. Essential to the achievement of these standards are the freedom to learn and to teach and the guarantee of equal opportunity for all.

**6A-10.081(1)(b)** –The educator's primary professional concern will always be for the student and for *the development of the student's potential*. The educator will therefore strive for professional growth and will seek to exercise *the best professional judgment and integrity*.

**6A-10.081(1)(c)** – Aware of the importance *of maintaining the respect and confidence of one's colleagues, of students, of parents, and of other members* of the community, the educator strives to achieve and sustain the highest degree of ethical conduct.

**6A-10.081(2)(a)(1)** – Shall make reasonable efforts to *protect the student from conditions harmful* to learning and/or *the student's mental* and/or physical *health* and/or safety.

**6A-10.081(2)(a)(5)** – Shall not *intentionally expose a student to unnecessary embarrassment* or disparagement.

**6A-10.081(2)(a)(6)** – Shall *not intentionally violate or deny a student's legal rights*.

**6A-10.081(2)(b)(1)** - Shall take *reasonable precautions to distinguish between personal views and those of any educational institution* or organization with which the individual is affiliated.

**6A-10.081(2)(c)(1)** – Shall maintain *honesty in all professional dealings*.

[sic]

10

IV. **School Board Policy 6.80 - Professional Ethics,** **states in part,**

   a. **6.80(I)** – All District employees shall conduct themselves at all times in an ethical manner and shall maintain and promote integrity.

   b. **6.80(II)** – Instructional personnel and administrators shall abide by and uphold the standards of ethical conduct in the *Principles of Professional Conduct for the Education Profession in Florida.*

V. **School Board Policy 10.10 (IV) - Definition Of Other Forms Of Prohibited Harassment states**

   a. Illegal harassment on the basis of any other characteristic protected by state or federal law is strictly prohibited. This includes verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his/her actual or perceived identity with regard to race, color, religion, gender or gender identity, age, marital status, disability, sexual orientation, political or religious beliefs, national or ethnic origin, veteran status, any other distinguishing physical or personality characteristics, or any other characteristic protected by law that

      1. Has the purpose or effect of creating an intimidating, hostile… academic environment;

      2. Has the purpose or effect of interfering with … academic performance; or

      3. Otherwise, adversely affects an individual's … academic performance.

   b. **Bullying**

      Bullying and harassment based on a student's actual or perceived identity with regard to race, color, national origin, gender or gender identity, disability, sexual orientation, religion, or any other distinguishing characteristics that may be defined by federal, state or local law, that

11

1. Is directed at one or more students;

2. Substantially interferes with educational opportunities or education programs of such students; *and*

3. Adversely affects the ability of a student to participate in or benefit from the school's educational programs or activities by placing a student in reasonable fear of physical harm, or because the conduct as reasonably perceived by the student is severe, pervasive, and objectively offensive.

**VI.   Retaliation Prohibited**

Any act of retaliation against an individual who files a complaint alleging a violation of the District's anti-discrimination policy and/or sexual or illegal harassment policy or who participates in the investigation of a discrimination complaint is prohibited.

Amended Step III Notice at p. 3-5.

38.   Even though Caggiano had never previously received any discipline, or even been the subject of a disciplinary complaint, the School Board elected to skip over steps I and II of the progressive discipline guidelines and go straight to step III discipline (just short of termination) because it claimed that the urgency and egregiousness of the conduct required it.  The School Board rules permit such actions only where there is:

a.      potential harm to the physical or mental wellbeing of a student, or students

b.      aggressive behavior and/or use of physical force or use of aggressive force that exceeds what is reasonable to protect [one's self] or others from harm

c.      failure to manage student behavior in the class or while on campus

d.    behavior that impairs the employee's effectiveness in performing her/his duties, professionalism, and confidence in the eyes of the students and parents/guardians.

39.    Denying that he violated any policies or had done anything wrong, and maintaining that his speech was Constitutionally protected free speech, Caggiano contested the charges in a formal hearing and hired legal counsel to do so.

## D.    ADMINISTRATIVE HEARING

40.    Pursuant to the state law administrative disciplinary regime, a formal hearing was conducted before a State of Florida, Division of Administrative Hearings ("DOAH") hearing officer on May 27, 2021, July 13, 2021, August 11, 2021, and August 18, 2021 (comprising nearly four full days).

41.    Throughout the disciplinary process, before, during, and after the hearing, Caggiano asserted his First Amendment rights, arguing that all the alleged offending Facebook posts were so protected.

42.    The evidence was clear that these posts represented Caggiano's personal views and did not purport to represent the official views of the school.

43.    The nearly four-day hearing was comprised almost entirely of testimony by witnesses with no knowledge of or connection to Caggiano's classroom performance,  all of which was unrelated to Caggiano's job as a math teacher – except the forced acknowledgement of his otherwise universally positive job performance ratings.    Instead, virtually all the testimony expressed disagreement with Caggiano's political and social views.

44.    The case was not about Caggiano's teaching.   It was not about anything he did in the classroom, or on school property, or related to any school function., or even his use of school board computers or equipment.   There was no testimony by even a single Caggiano student.   No parents of Caggiano

13

students testified either, except one whose testimony went to a collateral matter and was not about any of the issues in the case.

45. Nor was the case about Caggiano somehow expressing his political or personal views to students on campus, or even to coworkers – Caggiano never did these things. In fact, a Sandalwood High School vice principal testified that although she had known Caggiano for years, she had no knowledge of his personal social or political views.

46. Instead, the entire trial was consumed by reactions by others to the Facebook posts.

47. At the conclusion of the administrative hearing, the administrative law judge issued a recommended order, attached as Exhibit D. The recommended order suggested that two of the posts, attached separately as Exhibits E and F, violated school board policy.

48. The first post, Exhibit E, was a re-post of a humorous and hyperbolic poke at then presidential candidate Senator Bernie Sanders. Caggiano viewed that satirical post as political commentary which conveyed his disagreement with Sanders' political views.

49. The second post, Exhibit F, was also a re-post concerning Senator Sanders. This post was a "screen shot" from a television news program which had published a quote from Sanders himself. Believing these statements, which Caggiano found offensive, called into question his Sanders' fitness to hold political office, Caggiano felt it was important to share them. Although the quote was offensive, Caggiano shared it to exposed and condemn Sanders' views. Nonetheless, the administrative law judge, and ultimately the School Board, would penalize Caggiano for the offensiveness of the quote as if *Caggiano* had been its author, even though it was clear he was not. This is

14

like condemning history textbook, or any publication, as "racist," for accurately quoting notorious segregationist George Wallace to demonstrate his racism.

50.    Rejecting Caggiano's argument that his speech was political and protected by the First Amendment, the Administrative Law Judge instead held that the two posts were capable and deserving of discipline because they "concerned" "violence and abuse of a child, as well as discriminatory and degrading views of women abused and raped." *Id*. at 23.

51.    From that core conclusion, the administrative law judge recommended a finding that these two posts violated the School Board policy and rules, writing as follows:

> Caggiano violated rule 6A-10.081(1)(b), because the School Board established, by a preponderance of the evidence, that he failed to exercise best professional judgment and integrity.  As a result, the School Board has also established, by a preponderance of the evidence, a violation of rule 6A-5.056(2)(b).

> Caggiano violated rule 6A-10.081(1)(c), because the School Board established, by a preponderance of the evidence, that he failed to maintain the respect and confidence of his colleagues, students, and parents, and failed to sustain the highest degree of ethical conduct.  As a result, the School Board has also established, by a preponderance of the evidence, a violation of rule 6A-5.506(2)(b), which concerns "misconduct in office."

> Caggiano violated 6A-10.081(2)(a)1., because the School Board established, by a preponderance of the evidence, that he failed to make reasonable effort to protect students from conditions harmful to learning and/or to students' mental and/or physical health and/or safety.  As a result, the School Board has also

15

established, by a preponderance of the evidence, a violation of rules 6A-5.056(2)(b), which concerns "misconduct in office."

Caggiano violated rule 6A-10-081(2)(a)5., because the School Board established, by a preponderance of the evidence, that he intentionally exposed students to unnecessary embarrassment or disparagement. As a result, the School Board has also established, by a preponderance of the evidence, a violation of rule 6A-5.056(2)(b), which concerns "misconduct in office."

Caggiano violated rule 6A-10.081(2)(b)1., because the School Board established, by a preponderance of the evidence, that he failed to take reasonable precautions to distinguish between personal views and those of any educational institution or organization with which he is affiliated. As a result, the School Board has also established, by a preponderance of the evidence, a violation of rule 6A-5.056(2)(b), which concerns "misconduct in office."

Caggiano violated rule 6A-5.056(1) which concerns "immorality" because the School Board established, by a preponderance of the evidence, that his actions constituted immorality, which is "conduct that brings the individual concerned or the education profession into public disgrace or disrespect and impairs the individual's service in the community.

Caggiano violated School Board Policy 10.10(IV)(A), because the School Board established, by a preponderance of the evidence, that he engaged in conduct that denigrates or shows hostility or aversion toward an individual because of his/her actual or perceived identity with regard to gender.

16

Recommended Order at p. 23-24.

52.    Caggiano filed exceptions to the recommended order including asserting First Amendment protections yet again.  Caggiano pointed out that the two posts are political discourse directly aimed at Senator Sanders, both a highly political and divisive public figure, and a then presidential candidate.  Neither of the posts referenced his school, students the school system, the Duval County School Board, co-workers, minors, race, sex, or any ethnic group.  For its part, the School Board's administration filed no exceptions to the recommended order.

53.    On January 19, 2022, the School Board adopted the recommended order in full and issued its Final Order.  A copy of the Final Order is attached hereto as Exhibit G.  An appeal to the Florida First District Court of Appeal was filed thereafter and remains pending.

## COUNT I

### First Amendment - U.S. Constitution

54.    The allegations of paragraph 1 through 53, are incorporated by reference and made a part hereof as if fully set forth herein.

55.    Pursuant to 42 U.S.C. § 1983, Caggiano brings this claim against the School Board acting under color of state law to deprive him of his First Amendment rights secured by the U.S. Constitution.

56.    Caggiano's Facebook posts are pure speech lying at the very heart of the protections of the First Amendment right to free speech guaranteed by the U.S. Constitution.

57.    The actions of the School Board directly abridge his freedom of speech as applied to the state and local governing bodies through the Fourteenth Amendment to the U.S. Constitution.

17

58. It is well established that public employees, including teachers, do not lose their First Amendment rights merely because of their occupation. *See e.g.*, *Pickering v. Board of Education*, 391 U.S. 563 (1968). Speech outside the scope of ordinary job duties is protected under the First Amendment, especially when it relates to a matter of public concern, political or social.

59. The adverse action taken against Caggiano directly relate to and stem from his speech which is protected by the First Amendment.

60. The actions taken by the School Board, and the rules and policies on which such actions are purportedly based, directly violate Caggiano's First Amendment rights and chill the right to future expression. Such School Board actions, rules, and polices, should be enjoined to prevent further irreparable injury and a further chilling effect on Caggiano and others.

61. The adverse action and retaliation by the School Board have caused economic and noneconomic damages to Caggiano including, but not limited to, attorney's fees and mental anguish.

WHEREFORE, Plaintiff Thomas J. Caggiano demands judgment relief against Defendant School Board and State of Florida, for injunctive relief, damages, costs, attorneys' fees, and such other relief as this court deems appropriate.

## COUNT II

### Florida Constitution

62. The allegations of paragraph 1 through 53 are incorporated by reference and made a part hereof as if fully set forth herein.

63. Pursuant to § 760.51, Fla. Stat., Caggiano brings this claim against the School Board acting under color of state law to deprive him of his Article I Section 4 rights secured by the Florida Constitution.

18

64.     Caggiano's Facebook posts are pure speech lying at the very heart of the right to free speech guaranteed by Article I Section 4 Florida Constitution.

65.     Public employees, including teachers, do not lose their Article I Section 4 rights merely because of their occupation. Speech outside the scope of ordinary job duties is protected under the State Constitution, especially when it relates to a matter of public concern, political or social.

66.     The adverse action taken against Caggiano directly relates to and stems from the speech which is protected by Article I Section 4.

67.     The actions taken by the School Board, and the rules and policies on which such actions are purportedly based, directly violate Caggiano's Article I Section 4 rights and chill the right to future expression.  Such School Board actions, rules, and polices, should be enjoined to prevent further irreparable injury and a further chilling effect on Caggiano and others.

68.     The adverse action and retaliation by the School Board have caused economic and noneconomic damages to Caggiano including, but not limited to, attorney's fees and mental anguish.

WHEREFORE, Plaintiff Thomas J. Caggiano demands judgment and relief against Defendant School Board for injunctive relief, damages, costs, attorneys' fees, and such other relief as this court deems appropriate.

## COUNT IV

### Disparate Treatment Under Title VII

69.     The allegations of paragraph 1 through 53, are incorporated by reference and made a part hereof as if fully set forth herein.

70.     The decisions and actions of the School Board relating to Facebook posts by teachers has been directed only against Caggiano and not against other similarly situated teachers who have also engaged in similar Facebook

19

posts and similar speech constituting disparate treatment under Title VII of the Civil Rights Act of 1964.

71.    The School Board has directly discriminated against Caggiano on the basis of his political and social viewpoints, which lie at the heart of the First Amendment.  Such conduct is illegal discrimination pursuant to 42 U.S.C § 2000e-2.

72.    Caggiano is entitled to an injunction reinstating him to his position as an advanced mathematics instructor as the high school level pursuant to 42 U.S.C. § 2000e-5(g), and restore him to all the monetary and nonmonetary benefits he then had and would have received but for the School Board's improper actions.

WHEREFORE, Plaintiff Thomas J. Caggiano demands judgment and relief against Defendants School Board for injunctive relief, damages, costs, attorneys' fees, and such other relief as this court deems appropriate.

## COUNT V

### Protected Characteristic Under Title VII

73.    The allegations of paragraph 1 through 53, are incorporated by reference and made a part hereof as if fully set forth herein.

74.    Caggiano's protected political and social speech was the direct motivating factor and cause behind School Board's decision to take adverse employment action against Caggiano.

75.    As such, the School Board's conduct violates 42 U.S.C § 2000e-2(m).

WHEREFORE, Plaintiff Thomas J. Caggiano demands judgment and relief against Defendant School Board for injunctive relief, damages, costs, attorneys' fees, and such other relief as this court deems appropriate.

20

## COUNT VI

### Retaliation Under Title VII

76.     The allegations of paragraph 1 through 53, are incorporated by reference and made a part hereof as if fully set forth herein.

77.     The School Board retaliated against Caggiano as prohibited by Title VII of the Civil Rights Act of 1964 when it took adverse employment action against him on the basis of his political and social viewpoints and challenged the prohibited employment action related thereto thereby discriminating against him based on his speech and opposition to their actions.

78.     As such, the School Board has violated 42 U.S.C. § 2000e-3(a).

WHEREFORE, Plaintiff Thomas J. Caggiano demands judgment and relief against Defendant School Board for injunctive relief, damages, cost, attorneys' fees, and such other relief as this court deems appropriate.

### DEMAND FOR JURY TRIAL

Caggiano hereby demands trial by jury on all issues so triable.

DATED this 2d day of July, 2024.

**LAW OFFICES OF KELLY B. MATHIS**

Kelly B. Mathis, Esquire
Lead Trial Counsel
Fla. Bar No.:  0768588
3577 Cardinal Point Drive
Jacksonville, FL 32257
904-549-5755
Primary:    kmathis@mathislaw.net
Secondary:  callen@mathislaw.net
*Attorney for Caggiano*

**JASON BLOCH, ESQ.**
*/s Jason Bloch*
Jason Bloch, Esq.
Fla. Bar. No. 33588
3501 W Glencoe St
Miami, FL 33133
786-208-9802
Primary: jebloch@att.net
*Co-counsel for Caggiano*

22